DIONISIA ELISA ARABÍA DE GOYCO ET AL., Plaintiffs and Appellees, *v.* PEDRO JUAN ARMSTRONG, Defendant and Appellant.

No. 3994. Argued December 2, 1926.—Decided July 19, 1927.

*Alberto S. Poventud* and *José Poventud* for the appellant. *R. Arjona Siaca* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for denial of a servitude of light and views, wherein it is prayed that certain openings or windows made by the defendant in his own wall contiguous to the soil and the sky of the plaintiff be closed up. The construction of section 589 of the revised Civil Code is in issue. Also whether the same is constitutional or not.

Dionisia Elisa Arabía, the owner of a certain property situated in the urban zone of the municipality of Ponce, and her husband, Ramón G. Goyco, sued Pedro Juan Armstrong, the owner of an adjoining property situated in the same urban zone, praying the court to adjudge the defendant to close up certain openings or windows, or to raise them to the level of the girders in the manner provided by law.

It was shown at the trial that the parties are owners of their respective properties and also that the defendant added to his house a certain structure which touches the boundary line between his lot and that of the plaintiffs, the latter being an admitted fact.

The evidence is neither bulky nor complicated and the record contains the minutes of an ocular inspection and a photograph which permit one to obtain a quite exact idea of the structure in question. The minutes of the inspection read as follows:

"The Judge, accompanied by the parties and their respective attorneys, as well as by the clerk and stenographer, proceeded to go first to the courtyard of the property of the defendant, Pedro

Juan Armstrong, situated on Mayor Street. At the entrance to the courtyard of defendant's house, immediately after the door thereof, it developed that from the wall of Mr. Armstrong's house to the wall which is the boundary line with plaintiff's house, there is a distance of 3.90 meters; that touching this (*sic*) there is a wall 38 centimeters thick which goes up from the floor of the courtyard to a height of 3.20 meters, the same being a massive wall which extends from the entrance of the house and thence inside the courtyard for a distance of 5.05 meters; from the upper part of this wall and on the center thereof there is a pillar having a height of 1.32 meters, and towards both sides there is an arch 1.84 meters long; on this central pillar and that of the other side, upwards, is built the porch in question.—The court observed that the judge being situated at a distance of two meters from the dividing wall between both properties, of plaintiff and defendant, looking towards the inside of defendant's courtyard, horizontally (*sic*) to the wall that has been described, and looking upwards and through the arches also described, which exist on the base of the porch, there can be seen the sky and the upper part of plaintiff's house, where there is a small opening near the roof; that is to say, looking through the second arch, or the one farther inside the property, and the person being situated in the same position in relation to the first arch, which is the one nearest the entrance to defendant's property, if one looks horizontally, the only thing that can be seen is the wall already described, and looking upwards and through the said first arch one may see the sky and the upper end of plaintiff's house, with the window already mentioned. The court observed that in order to be able to see through both arches, already described, it is necessary to raise the head and throw it back as if to look at the sky.

"The judge proceeded to go to the porch over the courtyard which has been already described, and upon measuring the altitude from the floor of the porch to the girders of the wall of the porch (*sic*) which looks towards plaintiff's property, he found that there was a distance of 2.50 meters; that the said wall, for a height of a meter, is made of masonry, and the rest up is made of wood; that on the wooden part there are six openings each having cross-pieces made also of wood; that the said openings are 42 centimeters high and 32 centimeters wide; that the openings between the cross-bars are 13 centimeters by 13 centimeters, and they are all equal.

"The court stated that the said three (*sic*) openings exist in the

wall of the porch which marks the dividing line between the property of the plaintiff and that of the defendant.

"The court observed that the Judge, situating himself at a distance of two meters from the wall which divides the properties of plaintiff and defendant, upon the porch, and looking towards plaintiff's property through the six openings that have been described, could see the sky, the wall of plaintiff's house and part of the window in the upper part of plaintiff's house, which has been already described.

"The inspection at the house of the defendant having been concluded, the court proceeded to go to plaintiff's house, commencing the inspection at the courtyard of the said house. From the courtyard of plaintiff's house it is observed that the middle pillar, on which the porch has been built, commences about five inches above the wall dividing both properties and over the wall which has been described and on which the said house is built (sic); that there is a distance of a few centimeters between the said dividing wall and the wall on which the porch is built, due to the fact that the dividing wall leans a little towards the inside on the part over the courtyard of plaintiff's property; that the said middle pillar divides the two arches or openings that have been described, with their dimensions, in these minutes. The court observed that there are two openings between the middle pillar and the two lateral pillars which form the base of the porch; and that he was willing to admit that the two lower openings of the porch have no iron bars, nor wooden cross-pieces, nor bars of any kind, that they are two ordinary openings, and that the six small openings existing in the porch have wooden cross-pieces, as described."

While testifying at the trial plaintiff Goyco expressed himself in part as follows:

"These are two pillars, a portion of which touches the wall which marks the dividing line between the two properties. Above those two pillars is the terrace to which we have been referring, leaving an aperture between the said pillars in the form of windows; and the upper part of the terrace, that is, the porch itself is almost entirely open with two wooden cross-works.

"   *          *          *          *          *          *          *

"This cross-work, of course, existed when the photographs were taken but does not exist today.

"   *          *          *          *          *          *          *

"The terrace exists as it was except that a wooden wall was recently built there, after the complaint had been filed.

" *     *     *     *     *     *·     *

"Let us see whether I can explain things more clearly. Upon leaving the porch Mr. Armstrong inevitably confronts himself in a sudden manner with my property, with my room, in front, and undoubtedly he must see everything through the wooden cross-work and the windows to which I have been referring."

While on the stand the defendant said, in part, as follows:

"That porch is built on a concrete wall which I constructed, independent from the wall which forms the boundary, and on three concrete pillars.

" *     *     *     *     *     *     *

"In the lower part there is a small pillar between the two main pillars, and in the upper part a porch with a wooden cross-work covered almost entirely.

" *     *     *     *     *     *     *

"To the question: 'If you wished to look at the neighbor's property, that is, towards the property of the plaintiff, would you need the aid of anything?' he replied: 'I would have to climb a ladder or something high, because nothing can be seen except the sky-light, a small window which exists there near the ceiling.'

"Questioned: 'Did you finally do something there?' he replied. 'Recently, with the intention of smoothing matters, but not because I thought I was bound to do it, I covered the opening to a certain height, at which I could see nothing in any form, but I did that as a matter of courtesy, but not as an obligation, not because I felt bound to do it."

Taking these facts as a basis and relying on section 589 of the Civil Code and on the jurisprudence and the opinions of commentators cited, the district judge rendered the judgment appealed from ordering the defendant "to close up the two openings or windows existing in the lower part of the structure" and to reform "the six openings or windows existing in the upper story or porch of the said construction * * * in order to conform to the provisions of section 588 of the Civil Code."

The appellant assigns three errors in his brief. The first

one refers to the undue application of section 589 of the Civil Code to the facts of the case; the second, to the lack of jurisdiction of the court, because the amount in controversy was not established, and the third one is to the effect that the law applied to regulate the rights of the parties is unconstitutional.

Although it might have been more natural to discuss first the second and third assignments, especially the second one, we will follow the order adopted in the brief because in point of fact it is under the first assignment that the real questions in issue in this interesting suit are raised.

Section 589 of the Revised Civil Code, in so far as pertinent, reads literally as follows:

"Windows with direct views, or balconies or any similar openings projecting over the tenement of a neighbor shall not be made if there is not a distance of two meters between the wall in which they are built and the said property."

This section is exactly similar to section 582 of the old Civil Code. The commentators say that it has no precedent in the Roman Law or in the historical Spanish Law. It showed up for the first time in the projected code of 1851, then in the projected code of 1882, and lastly in the Civil Code of 1889. It corresponds with similar provisions contained in the codes of France, Italy, Belgium, Holland, Chile and Guatemala. See 4 Manresa's Commentaries on the Civil Code, 765; 10 Scaevola, Civil Code, 485, and 1 Pedregal's Text of and Commentaries on the Spanish Civil Code, 747. It has been construed and applied in several instances by the Supreme Court of Spain and by this Supreme Court of Porto Rico. It seems convenient to make reference here to the cases of *Rabell* v. *Rodríguez et al.*, 24 P.R.R. 526, 534; *García* v. *García*, 25 P.R.R. 119; *Vallecillo* v. *Vidal*, 33 P.R.R. 325; *Rodríguez* v. *Colón*, 34 P.R.R. 74, and *Vincenty* v. *Domínguez*, 35 P.R.R. 100.

Hence, in Porto Rico it is positively prohibited by law to

open, 1st, windows with direct views, 2nd, balconies, and 3rd, other similar openings projecting over the tenement of a neighbor, if there is not a distance of two meters between the wall in which they are built and the said property.

There is no question as to distances in this case. Both properties, that of the plaintiffs and that of the defendant, are divided by an old masonry wall which is clearly visible in the photograph presented in evidence. Independently of it, but coming very close, the defendant erected the structure in question. Before he built it the wall of his house from which the same projects or to which it is attached, was situated at a distance of more than three meters from the dividing line between his lot and that of the plaintiffs.

The peculiarity of this case, what distinguishes it from the others already decided, arises when it is sought to determine the kind of structure built by the defendant, for the purpose of ascertaining and deciding whether or not it comes within the statutory prohibition.

The criterion of this court as set down in the cases of *Rabell, Vallecillo* and *Colón, supra,* is that the provision being in restriction of the right of ownership, it must be strictly construed. In the light of that view we will examine the facts of this case. The structure in question has been given different names throughout the record, but it seems that the parties and the judge finally coincide, without attempt at an understanding, in the name *"terraza."*

The Dictionary of the Spanish Royal Academy says that *"terraza"* is a glazed jar with two handles, but makes reference to the word *"terrado"* (terrace), which according to the same authority means "the place of a house, uncovered and above the floor level, from which one may take an extended view."

There is no doubt, judging from the photograph offered in evidence, from the ocular inspection and from the testimony of the parties, that the defendant originally attempted

to build and did build a commodious and beautiful terrace on the side of his house which looks towards the property of the plaintiffs. It has two stories; the second one is the actual terrace; the lower one was necessary in order to obtain the elevation desired and was built in such a manner as to protect the interior entrance to the house, which instead of being adjacent to an open and uncovered place adjoins a place protected from the sun and the rain.

The statute refers only to windows, balconies or other similar openings. A terrace is not a common window. Can it be considered as a balcony or as an opening similar to a balcony?

Balcony, according to the Dictionary of the Academy, *supra,* is "a large window, opened from the floor of the premises, and commonly having a projecting balustrade." Corbel is that "which projects from the massive part of the walls or buildings."

Taking into consideration the above definitions and the actual facts, notwithstanding the restrictive construction that must be put upon the statute, it is necessary to conclude that a terrace is a spacious balcony the purpose of which is to give more extension to a dwelling and where the family and its intimate guests usually assemble, where parties are given and from where a more extended view may be taken, receiving at the same time more freely than in the inside of the house the action of the light and the air. They are generally covered by twining plants. It is, therefore, an opening similar to a balcony, and the fact that an extra wall or pillars have been built to support it is no impediment why it should not be called a balcony. On many occasions when balconies are very wide and there is fear that the wall from which they project should be impaired, they are supported by underlying pillars, and still they are balconies and are called so.

The defendant himself became aware that he could not

preserve his terrace entirely as such, that is, open upon the side which looks toward plaintiff's lot, and over the cement wall erected a wooden wall leaving the openings which are described in the inspection. It seems that he attempted to place himself within the rule laid down in the *Vallecillo Case, supra.*

Did he so place himself? In our opinion he did not. In the *Vallecillo Case* a high independent wall of reinforced concrete was built on the dividing line between the lots, and the court said: This having been done, it matters nothing what the owner of the lot may do in it. In this case the wall was built but certain openings, the character of which must be investigated, were left.

As we have seen, the terrace as such, that is, considered as a balcony or a similar opening, could not be built, as it was not only beyond the limit of the two meters fixed by the statute, but extending as far as the boundary line itself.

If it should be held that because of the raising of the wall of the boundary line the terrace ceased to be such as far as the plaintiffs are concerned, then the following question comes up: Can the openings existing both in the lower and the upper stories be considered or not as windows?

"Window," according to the Royal Academy, is "an opening more or less above the floor level, made in a wall for the purpose of affording light and air." "The wooden shutter or shutters with which a window is closed" is also called a window.

Although it is necessary to admit that we are not dealing here with ordinary windows with their shutters, it is not possible to fail to conclude that the openings through which light and air are received, existing in the two stories of the structure involved in this case, are windows.

Do these windows afford direct views? In order to answer this question properly it is necessary to determine first what is understood by direct views.

Manresa, in his Commentaries so many times cited by this Court, says:

"*Direct* views—front views—are those which are opened in the wall which is parallel to the dividing line between the properties, and which may be used by man keeping his head in its normal position. Through them he looks perpendicularly over the dividing line between the wall and the adjoining property. *Oblique* or lateral views are those opened in a wall which forms an angle with the dividing line between the properties. In order to use them man has to shift his head to either side. If the structure should be a balcony or other projection, its side shall afford a direct view upon the property of the neighbor." 4 Manresa's Commentaries on the Civil Code, page 765.

Scaevola expresses his opinion, which he illustrates with two diagrams, as follows:

"The authorities on legal architecture call *direct views* (8th diagram) those wherein the opening of which they consist is made in a wall parallel to the dividing line between the properties, and 'oblique views' (9th diagram), those wherein the wall in which they are opened forms an angle with the said line. In the case of the former it is not necessary to turn the head in order to look at the neighboring tenement, and in the case of the latter it is." 10 Scaevola, Civil Code, 494.

Relying on certain observations which the trial judge made to appear from the minutes of the inspection, the appellant maintains that in this case the views were not direct because it is necessary to lift the head in order to look through the openings. Manresa's opinion presents some doubts to that effect if examined lightly, but not when inquired into with some detention. Scaevola's opinion does not favor the appellant's contention and the Civil Code itself is also against it when it provides in section 590 that "the distances referred to in the preceding section (589) shall be measured, in cases of direct views, from the outer line of the wall when the openings do not project, from the line of the latter, when they exist."

It seems convenient to transcribe the following paragraph from appellee's brief in opposition to that contention:

"This theory is untenable. It is enough that, whatever the distance at which a person may place himself, if he look toward the wall where the openings are made he must look straight ahead, even though he may have to raise his head or to lower it. If the line of vision is perpendicular to the dividing line between the properties, the view is direct, whatever the position of the openings in connection with the head of the observer. A perpendicular line of vision does not mean a line which forms a right angle with the dividing line; it may form an acute angle, or an obtuse angle, and still be a perpendicular line upon meeting and crossing, supposedly, the dividing line between the properties. Besides, when Manresa says that the head is kept in its normal position, this does not preclude raising or lowering it in order to obtain the view, but he means that it is not necessary to do what is indispensable to obtain oblique views, that is, to turn the head to one side or the other in order to be able to obtain a view of the neighboring property."

Therefore, the openings, as windows with direct views that they are, come within the prohibition of section 589 of the Civil Code, inasmuch as the wall in which they are opened is parallel to the dividing line between the properties, and in using them the head is kept in its normal position, the person looking perpendicularly over the dividing line between the wall and the property of the neighbor.

However, it is not entirely forbidden to obtain light and air in a case like that of the defendant. Subject to the right of the owner of the adjacent property to cover it by building a structure on his land or by erecting a wall adjacent to that having "such opening or window," the owner of a wall which is not a party wall, adjoining another's tenement, may open in it "windows or openings" to admit light, at the height of the ceiling joists, or immediately under the level of the ceiling, of the dimensions of thirty centimeters square, and, in any case, with an iron grate embedded in the wall, and a wire screen. Section 588 of the revised Civil Code.

That is the only right of the defendant herein, considering the structure as he himself described and called it in the fifth allegation of his answer, as follows:

"That the defendant built on his said lot, not a corbel, but a structure with supports or pillars of reinforced concrete, *which is and forms part of the body of the main house. . .*" (Italics ours.)

It is observed that the judgment orders the entire closing of the openings or windows of the lower story. In this it is erroneous. As regards the lower story there should have been made the same pronouncement as concerning the second story, in accordance with the jurisprudence laid down in the case of *Garcia* v. *Garcia, supra,* as follows:

"The horizontal beams of wood or other material placed on the wall-plates of a building to serve as the main connection and support of the different floors which separate the stories, are called joists (*carreras* or *vigas*). The roof is the exterior part exposed to the direct action of the elements, and the interior parts covering the rooms are the ceilings; therefore there are several ceilings in a building of several stories and hence as many sets of joists as ceilings." *Garcia* v. *Garcia,* 25 P.R.R. 119.

The error relative to the lack of jurisdiction of the district court does not exist, in our opinion. In the first place, it seems that this suit, because of its own nature, corresponds to the district court, which is the court of general jurisdiction. It is doubtful whether the amount in controversy can be ascertained in a case like the present. But in any case, it having been proved that plaintiffs' property was acquired for $15,000 and that the liberation of that property from the servitude of lights and views in question is the matter in issue, there is no doubt about the jurisdiction of the district court. Even applying the rule cited by the appellant, that is, number 11 of the Tariff of Registrars of Property, Laws of 1917, Vol. II, page 316, the jurisdiction seems clearly vested. Five per cent of $15,000 is $750 and

the highest amount of the jurisdiction of the municipal courts is $500.

Nor is the third and last assignment of error tenable.

The provision in question has been in force in Porto Rico for nearly forty years, and other provisions of like character have been in force here for centuries.

The people, through the legislative branch of the government, have a right to determine in general the modes of acquisition and enjoyment of the ownership of real property and to fix the extension thereof. That was what they did in this instance. When property is acquired, it is acquired subject to the rules fixed by law. Section 589 does not prevent the owner of a property to build his house as far as the boundary of his property. It acknowledges his dominion over the whole of it, but if the owner desires to erect a permanent building with direct views, he can do so only at a distance of two meters from the boundary of his lot, and he is granted, in compensation, the right to demand that his neighbor do the same. The matter of servitudes has been a field of action for the law-maker from the most ancient times. Here, therefore, the Legislature entered its own field and not a forbidden one, and its action is not so arbitrary as to be considered one in violation of any right guaranteed by the Constitution.

Considering the excessive amount of work before this Court, we shall not make a more elaborate analysis of this question. That the contention is untenable is apparent. The case of the *Municipality of Ponce v. Vendrell*, 28 P.R.R. 306, which the appellant cites, refers to a legal situation entirely different and is, therefore, inapplicable.

The judgment appealed from must be modified in the manner indicated, and, as modified, affirmed.

Mr. Justice Hutchison took no part in the decision of this case.